**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| H-D U.S.A., LLC, <br><br> Plaintiff, <br><br> v. <br><br> 46GPFORTYSIX STORE, et al., <br><br> Defendants. | Case No. 19-cv-03547 <br><br> **Judge Gary Feinerman** <br><br> **Magistrate Judge Jeffrey Cole** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff H-D U.S.A., LLC ("Plaintiff" or "Harley-Davidson") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. Harley-Davidson's Trademarks and Products .......................................................... 2

    B. Defendants' Unlawful Activities ............................................................................... 3

III. ARGUMENT ..................................................................................................................... 3

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

    B. Harley-Davidson Will Likely Succeed on the Merits .............................................. 6

    C. There Is No Adequate Remedy at Law, and Harley-Davidson Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......................................... 8

    D. The Balancing of Harms Tips in Harley-Davidson's Favor, and the Public Interest Is Served by Entry of the Injunction ....................................................................... 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ......................................... 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the HARLEY-DAVIDSON Trademarks Is Appropriate ............................................................................................................. 10

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................... 11

    C. Harley-Davidson Is Entitled to Expedited Discovery ........................................... 12

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 13

VI. CONCLUSION ................................................................................................................ 13

**MEMORANDUM OF LAW**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Harley-Davidson is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Harley-Davidson's Amended Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed counterfeit products using counterfeit versions of Harley-Davidson's federally registered trademarks (collectively, the "Counterfeit Harley-Davidson Products"), through the fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts identified in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Harley-Davidson Products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Harley-Davidson Products offered for sale establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Harley-Davidson is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Harley-Davidson Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Harley-Davidson respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

1

## II. STATEMENT OF FACTS

### A. Harley-Davidson's Trademarks and Products

Harley-Davidson is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel, jewelry, leather goods, and assorted accessories (collectively referred to herein as "Harley-Davidson Products"). *See* Declaration of Adraea M. Brown (the "Brown Declaration") at ¶ 3. Since at least as early as 1903, Harley-Davidson has used and promoted the HARLEY-DAVIDSON name and trademark in connection with motorcycles, motorcycle parts and accessories. *Id.* at ¶ 4. Harley-Davidson has continuously sold motorcycles and related goods under the HARLEY-DAVIDSON and other trademarks (collectively, the "HARLEY-DAVIDSON Trademarks"). *Id.* at ¶ 8.

The U.S. registrations for the HARLEY-DAVIDSON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at 10. The registrations for the HARLEY-DAVIDSON Trademarks constitute *prima facie* evidence of their validity and of Harley-Davidson's exclusive right to use the HARLEY-DAVIDSON Trademarks pursuant to 15 U.S.C. § 1057(b). The HARLEY-DAVIDSON Trademarks have been used exclusively and continuously by Harley-Davidson and have never been abandoned. *Id.*

Genuine Harley-Davidson Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Harley-Davidson brand. *Id.* at ¶ 14. Harley-Davidson has numerous licensees in the United States that are authorized to sell a wide range of Harley-Davidson Products. These licensees have offered a wide variety of products under the Harley-Davidson Trademarks for decades. *Id.* at ¶ 15. In 2015, Interbrand estimated the value of the HARLEY-DAVIDSON brand at US $5.46 billion. The goodwill associated with the HARLEY-DAVIDSON brand and the HARLEY-DAVIDSON Trademarks is of incalculable and inestimable value to Harley-Davidson. *Id.* at ¶ 21.

### B. Defendants' Unlawful Activities

The success of the Harley-Davidson brand has resulted in its significant counterfeiting. *Id. at* ¶ 22. Consequently, Harley-Davidson has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id*. In recent years, Harley-Davidson has identified many online marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Harley-Davidson Products to consumers in this Judicial District and throughout the United States. *Id*. Despite Harley-Davidson's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. *Id*. Harley-Davidson's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Harley-Davidson Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are interrelated. In the event that Defendants provide additional credible information regarding their identities, Harley-Davidson will take appropriate steps to amend the Amended Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Harley-Davidson's reputation and the goodwill symbolized by the HARLEY-DAVIDSON Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of a TRO is appropriate because it would

immediately stop the Defendants from benefiting from their wrongful use of the HARLEY-DAVIDSON Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-7. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Harley-Davidson respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the HARLEY-DAVIDSON Trademarks. *See* Amended

4

Complaint at ¶¶ 2, 24, 33 and 34. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required).

Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Harley-Davidson substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Harley-Davidson Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Harley-Davidson's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08-cv-400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the HARLEY-DAVIDSON Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The HARLEY-DAVIDSON Trademarks have been used exclusively and continuously by Harley-Davidson since 1903. Brown Declaration at ¶¶ 8, 13. The registrations for the HARLEY-DAVIDSON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. The registrations constitute *prima facie* evidence of their validity and of Harley-Davidson's exclusive right to use the HARLEY-DAVIDSON Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Harley-Davidson has not licensed or authorized Defendants to use any of the HARLEY-DAVIDSON Trademarks, and none of the Defendants are authorized retailers of genuine Harley-Davidson Products. *Id.* at ¶ 17. Thus, Harley-Davidson satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the HARLEY-DAVIDSON Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Harley-Davidson has submitted extensive documentation showing that Defendants are selling Counterfeit Harley-Davidson Products that look similar to genuine Harley-Davidson Products and use counterfeit marks identical to the HARLEY-DAVIDSON Trademarks. Both Harley-Davidson and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Harley-Davidson Products. Brown Declaration at ¶¶ 18, 27. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Harley-Davidson Products from Counterfeit Harley-Davidson Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Harley-Davidson Products to purchase Counterfeit Harley-Davidson Products instead. In that regard, Defendants advertise Counterfeit Harley-Davidson Products using the HARLEY-DAVIDSON Trademarks. Brown Declaration at ¶ 23, 24.

Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Harley-Davidson products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Harley-Davidson is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### C. There Is No Adequate Remedy at Law, and Harley-Davidson Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the HARLEY-DAVIDSON Trademarks has and continues to irreparably harm Harley-Davidson through diminished goodwill and brand confidence, damage to Harley-Davidson's reputation, loss of exclusivity, and loss of future sales. Brown Declaration at ¶¶ 30-34. The extent of the harm to Harley-Davidson's reputation and

8

goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Harley-Davidson will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Brown Declaration at ¶ 35.

> **D. The Balancing of Harms Tips in Harley-Davidson's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Harley-Davidson has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Harley-Davidson will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Harley-Davidson has demonstrated, Defendants have been profiting from the sale of Counterfeit Harley-Davidson Products. Thus, the balance of equities tips decisively in Harley-Davidson's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Harley-Davidson's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Harley-Davidson seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

#### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the HARLEY-DAVIDSON Trademarks Is Appropriate

Harley-Davidson requests a temporary injunction requiring Defendants to immediately cease all use of the HARLEY-DAVIDSON Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the HARLEY-DAVIDSON Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the HARLEY-DAVIDSON Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Harley-Davidson is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Harley-Davidson Products. Many courts have authorized immediate injunctive relief in similar cases involving the

10

unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Harley-Davidson requests an *ex parte* restraint of Defendants' assets so that Harley-Davidson's right to an equitable accounting of Defendants' profits from sales of Counterfeit Harley-Davidson Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Harley-Davidson meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Harley-Davidson has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a) (1), Harley-Davidson is entitled, "subject to the principles of equity, to recover ... defendant's profits." Harley-Davidson's Amended Complaint seeks, among other relief, that Defendants account for and pay to Harley-Davidson all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Harley-Davidson's request for a prejudgment asset freeze to preserve relief sought by Harley-Davidson.

---

[1] Harley-Davidson has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

11

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892 at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

Harley-Davidson has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Harley-Davidson Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Harley-Davidson respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Harley-Davidson's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be

12

frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Harley-Davidson's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Harley-Davidson respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Harley-Davidson's evidence of counterfeiting, infringement, and unfair competition, Harley-Davidson respectfully requests this Court require Harley-Davidson to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

### VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Harley-Davidson's business, its famous Harley-Davidson brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Harley-Davidson Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Harley-Davidson Products have been manufactured by or emanate from Harley-Davidson, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Harley-Davidson respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 5th day of June 2019. Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiff H-D U.S.A., LLC*